# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### NORMAL DIVISION

———

JERMIAL ALI REDDING,

               Petitioner,                 Case No. 2:19-cv-247

v.                                       Honorable Paul L. Maloney

CONNIE HORTON,

               Respondent.

_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>Discussion</u>

## I.      Factual allegations

Petitioner Jermial Ali Redding is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Chippewa County, Michigan.   On October 17, 2013, following a six-day jury trial in the Wayne County Circuit Court, Petitioner was convicted of armed robbery, in violation of Mich. Comp. Laws §  750.529; carrying a concealed weapon (CCW), in violation of Mich. Comp. Laws § 750.227; felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.227f; and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.   On November 1, 2013, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 2 to 10 years on the felon-in-possession and CCW convictions and 15 to 30 years on the armed robbery conviction.   Those sentences were to be served consecutively to a 2-year sentence on the felony-firearm conviction.

The Michigan Court of Appeals described the facts underlying Petitioner's conviction in a brief recounting of the prosecutor's opening argument:

[T]he prosecutor stated:

Basically, on March 20th, 2013, at approximately 3:30 in the afternoon, daylight time, Tiara Jones and Melonie McCormick, school age young ladies were walking down the street, and at that time they witnesses [sic] a green Neon, four door, with four individuals in it, pass by them, turn around, and kind followed [sic] them, to where it is that they made their turn.

At that point in time, the individual that was in the one front passenger side of that vehicle got out of the car, that individual being this Defendant right here, and indicated to them that this is a stick-up, and that he had his gun in his waistband area.  He showed them that gun, and he basically said to them give me everything that you have.

One of the young ladies had a purse with various items inside of it and she can testify to that, and that was taken from her.  The other young lady had an I-phone

it was or a Smart Phone, and that was taken from her, and that it was approximately 3:30.

At that point in time, that person then got back in the vehicle. There was also another individual in the back seat that basically gets out and makes some statements and closes the door. And then at that time the vehicle takes off . . . .

*People v. Redding*, No. 319255, 2015 WL 1227570, at *2-*3 (Mich. Ct. App. Mar. 17, 2015).

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences raising four issues, the same four issues he raises in his petition. By unpublished opinion issued March 17, 2015, the Michigan Court of Appeals denied relief, affirming the trial court. Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same four issues.

Between the Michigan Court of Appeals opinion and the Michigan Supreme Court's consideration of Petitioner's application, the Michigan Supreme Court decided *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). Because Petitioner's sentence was based on judge-found facts, the Michigan Supreme Court reversed that part of the court of appeals judgment that was contrary to *Lockridge* and remanded to the trial court to determine whether it would have imposed the same sentence absent the unconstitutional restraint imposed by statutory mandatory limits on the minimum sentence range. *People v. Redding*, 872 N.W.2d 453 (Mich. 2015).

The trial court denied Petitioner's request for resentencing. Petitioner appealed, with the assistance of counsel, claiming that his sentence was unreasonable and disproportionate. The court of appeals declined to address the issue because it was outside the scope of the remand. *People v. Redding*, No. 336896, 2018 WL 1733344 (Mich. Ct. App. Apr. 10, 2018). Petitioner filed a *pro per* application for leave to appeal in the Michigan Supreme Court. That court denied relief by order entered October 10, 2018. *People v. Redding*, 917 N.W.2d 875 (Mich. 2018).

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.4-5.)

Petitioner timely filed his habeas corpus petition raising four grounds for relief, as follows:

I.  Petitioner's CCW, felon-in-possession, and felony-firearm convictions must be reversed where the prosecution failed to present sufficient evidence to prove those charges beyond a reasonable doubt.

II.  The trial court reversibly erred, in violation of Petitioner's constitutional rights to due process, confrontation, and fair trial, by denying a mistrial where the prosecutor removed a complaining witness from their endorsed witness list without leave of the court but discussed that witness' allegedly incriminating testimony in opening statements.

III.  Petitioner was denied a fair trial, the right to confront witnesses, and the right to present a defense when defendant James Ready, who pled guilty to unarmed robbery in exchange for an agreement to testify, was allowed to claim a Fifth Amendment privilege from testifying due to unspecified reasons without a determination that privilege was valid and related to the issues in the case.

IV.  Resentencing is required where appellant's sentence range was increased based upon facts that were not found by a jury or proved beyond a reasonable doubt.

(Pet., ECF No. 1, PageID.7-11.)

## II.  AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Discussion

### A.    Sentencing based on "judge-found" facts (habeas issue IV)

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner's argument is based on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530

U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state

sentencing-guideline scheme, under which the maximum penalty could be increased by judicial

fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and

Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence

must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*,

543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *Booker*, 543 U.S. at 220, the Supreme Court determined that its conclusion with

regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal

sentencing guidelines. One group of five justices concluded that the federal sentencing guidelines

conflicted with the Sixth Amendment. Another group of five justices determined that the

appropriate remedy was to make the guidelines advisory, thereby avoiding the legislative mandate

that gave rise to the constitutional infirmity. The Sixth Amendment was not offended if a

discretionary sentence was based upon judge-found facts.

Subsequently, in *Alleyne*, 570 U.S. at 99, the Supreme Court held that the *Blakely*

line of cases applies equally to mandatory minimum sentences. Shortly thereafter, the Michigan

Court of Appeals concluded that *Alleyne* did not prohibit judicial fact-finding in scoring the

Michigan sentencing guidelines that generated the minimum range under Michigan's

indeterminate sentencing regimen. *See People v. Herron,* 845 N.W.2d 533, 539 (Mich. App.

2013).[1] The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial

---

[1] Under Michigan's system, the guideline determination affects only the minimum term. The maximum term is always the maximum punishment permitted by statute.

fact-finding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). As a consequence, the Sixth Circuit at least suggested that the question is not a matter of clearly established Supreme Court precedent. *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 570 U.S. at 113 (emphasis added)).

The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018). The Michigan Supreme Court had reached the same conclusion in a 5-2 decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *Lockridge*, 870 N.W.2d at 506 (emphasis in original). Consequently, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only. *Id.* at 520-21.

Petitioner's sentence preceded the *Lockridge* decision; so, his sentence was the product of mandatory sentencing guidelines. The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id.* at 523. Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision. The fact that

*Lockridge* applied to Petitioner's case, however, did not mean that Petitioner was automatically entitled to relief.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ." *Id*. at 522 (footnote omitted). The Michigan Supreme Court must have concluded that Petitioner fell within that limited group of defendants, because it remanded Petitioner's case to the trial court to remedy the constitutional infirmity.

The *Lockridge* court did not require that every defendant be resentenced. Instead, it called for a *Crosby* remand:

> We conclude that all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry. We reach this conclusion in part on the basis of our agreement with the following analysis from *United States v. Crosby*, 397 F.3d 103, 117-118 (C.A.2, 2005):
>
>> Some might suppose that the only choice for an appellate court in a case presenting a procedural error in imposing a sentence is between disregarding the error and requiring a new sentencing. However, the choice is not so limited . . . . Bearing in mind the several considerations outlined above that shape the context in which a disposition decision is to be made, we conclude that the "further sentencing proceedings" generally appropriate for pre-*Booker/Fanfan* sentences pending on direct review will be a remand to the district court, not for the purpose of a required resentencing, but only *for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence* . . . .
>>
>> A remand for determination of *whether* to resentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines. Without knowing whether a sentencing judge would have imposed a materially different sentence, . . . an appellate court will

normally be unable to assess the significance of any error that might have been made . . . .

Obviously, any of the errors in the procedure for selecting the original sentence discussed in this opinion would be harmless, and not prejudicial under plain error analysis, if the judge decides on remand, in full compliance with now applicable requirements, that under the post-*Booker/Fanfan* regime the sentence would have been essentially the same as originally imposed. Conversely, a district judge's decision that the original sentence would have differed in a nontrivial manner from that imposed will demonstrate that the error in imposing the original sentence was harmful and satisfies plain error analysis.

*In short, a sentence imposed under a mistaken perception of the requirements of law will satisfy plain error analysis if the sentence imposed under a correct understanding would have been materially different.* [Some emphasis added.]

*Lockridge*, 870 N.W.2d at 522-23 (footnotes omitted, italicized emphasis in original).

On remand, the court appointed counsel for Petitioner. Petitioner moved for resentencing, and the trial court denied the motion, thereby determining that the court would have imposed the same sentence even without the unconstitutional mandatory constraint.

As the Court indicated in *Booker*, 543 U.S. at 268, determining whether resentencing is warranted may depend, among other things, "upon application of the harmless-error doctrine." *Id.* Here, the mandatory nature of the sentencing guidelines at the time of Petitioner's sentence was harmless. The circuit court determined that it would have imposed the same sentence, even if the guidelines range were not mandatory, but only advisory. As the courts have recognized, purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481-82 (reiterating that "'a sentence

imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'")

(emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)). Because the trial

court determined that it would have imposed the same sentence whether or not the guidelines were

mandatory, Petitioner cannot demonstrate that he was prejudiced by the mandatory nature of the

guidelines at the time he was sentenced. Accordingly, Petitioner is not entitled to relief on his

claim that he was sentenced based upon "judge-found" facts.

**B.      Sufficiency of the evidence**

A § 2254 challenge to the sufficiency of the evidence is governed by the standard

set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is

"whether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This

standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See*

*Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine

the evidence supporting the conviction, in the light most favorable to the prosecution, with specific

reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16;

*Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of

fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both

the *Jackson* standard and the AEDPA apply to Petitioner's claims, "the law commands deference

at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as

contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals'

consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner challenges the sufficiency of the evidence with regard to his felon-in-possession, CCW, and felony-firearm convictions. He raises the issue here exactly as he raised it in the court of appeals. (Pet., ECF No. 1, PageID.3, 7.) He provides no facts or argument here to alter the issue as he raised it in the state courts. (*Id.*) In the court of appeals, Petitioner argued "that the prosecution failed to present credible evidence suggesting that defendant possessed a firearm at any time during the alleged robbery of Tiara Jones." *People v. Redding*, 2015 WL 127570, at \*1. In resolving Petitioner's claim, the court of appeals applied the following standard:

> In a challenge to a criminal conviction based on insufficient evidence, this Court reviews the record de novo. *People v. Parker,* 288 Mich.App 500, 504; 795 NW2d 596 (2010). This Court analyzes whether the evidence, taken in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. *Id.*

*Id.* The standard applied by the court, though based upon state court authority, is functionally identical to the *Jackson* standard.

Moreover, the court of appeals applied the standard exactly as *Jackson* directs. It considered the evidence admitted, specifically the evidence regarding Petitioner's possession of a firearm, in a light favorable to the prosecution, against the elements of the offense:

> Though defendant challenges the sufficiency of the evidence regarding three of his convictions, he only argues on appeal that one common element is lacking: his possession of a firearm during the robbery of Jones. However, defendant's only argument is that there was no evidence that he possessed a firearm other than Jones's testimony. Jones clearly stated that during the robbery, defendant lifted his shirt, exposing the handle and trigger of a black handgun. Jones also explained that she was familiar with what a gun looks like because she had seen them before. Contrary to defendant's suggestion, Jones's testimony was sufficient to allow a jury

to conclude that he, indeed, possessed a firearm. Therefore, defendant's convictions were appropriate.

*Id.* (footnote omitted).

Petitioner does not challenge the court of appeals determination that the record included Jones's testimony to the effect that Petitioner showed her a black handgun. Instead, he repeats his appellate claim, a claim centered on rejecting Jones's testimony as *not credible*. In presenting that argument, Petitioner turns the *Jackson* standard on its head. He specifically invites the Court to invade the province of the jury and evaluate the credibility of the testimony. Thus, it is Petitioner's position regarding sufficiency, not the state court's determination of the issue, that is contrary to, and an unreasonable application of, *Jackson*. Accordingly, he is not entitled to habeas relief on his sufficiency claim.

## C. Witness removal

Petitioner claims that the prosecutor removed from the witness list victim Melonie McCormick without leave of court and without stipulation by Petitioner's counsel. Petitioner's claim is grounded in Mich. Comp. Laws § 767.40a. That statute requires the prosecution to identify all witnesses who might be called at trial and all *res gestae* witnesses. Mich. Comp. Laws § 767.40a(1). The statute permits the prosecutor to add or delete from the list of witnesses to be called at trial, but only upon leave of the court for good cause shown or by stipulation of the parties. Mich. Comp. Laws § 767.40a(4). It appears to be undisputed that the prosecutor unilaterally removed Ms. McCormick from the list of witnesses who might be called.

When Petitioner discovered the prosecutor's unilateral removal of McCormick from the list, he moved for a mistrial for the prosecutor's failure to comply with the statute. Instead of granting a mistrial, however, the trial court dismissed an additional armed robbery charge that

specifically related to the robbery of Ms. McCormick and permitted the armed robbery and related firearm charges with respect to Ms. Jones to go forward.

Petitioner claimed he was prejudiced with regard to the counts relating to Ms. Jones because the prosecutor, in her opening statement, stated that McCormick had also been robbed and suggested that McCormick would testify. *See People v. Redding*, 2015 WL 1227570, at *2-*3. Petitioner claims that "'[t]he disclosure during the opening argument of McCormick's highly incriminating potential testimony against [defendant], in the context of this case, was so significantly prejudicial to [defendant's] fundamental and constitutional rights to due process and a fair trial that no cautionary instruction could have cured that taint.'" *Id.* at *3. In addition to his general due process arguments, Petitioner also claimed he was denied the right to confront Ms. McCormick.

To the extent Petitioner complains because the prosecutor failed to comply with Mich. Comp. Laws § 767.40a, his claim is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Petitioner's due process and confrontation claims are cognizable on habeas review; but, they are not well founded. First, with respect to Petitioner's claim he was denied his

constitutional right to confront Ms. McCormick, the Michigan Court of Appeals denied relief because Ms. McCormick never testified at trial and no statements from her were introduced at trial.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The Confrontation Clause is not implicated with respect to Ms. McCormick, because she never "testified" at trial, either directly or through the introduction of testimonial out-of-court statements, *Crawford*, 541 U.S. at 68-69.  The clause applies only to witnesses—those who provide testimony.  A criminal defendant has no right to confront a person who provides no evidence at trial.  *See Cooper v. California*, 386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant to testify against him.  This contention we consider absolutely devoid of merit."); *see also McCray v. Illinois*, 386 U.S. 300, 313-314 (1967) (same); *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992) ("The Sixth Amendment guarantees to a defendant the right to confront witnesses against him . . . [it] does not, however, require the government to call every witness competent to testify . . . ."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985) ("The confrontation clause does not come into play where a potential

witness neither testifies nor provides evidence at trial."); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985) ("[T]he Confrontation Clause is not a guarantee that the prosecution will call all the witnesses it has against the defendant.").

Accordingly, Petitioner has failed to show that the state appellate court's determination that Petitioner is not entitled to relief on his Confrontation Clause claim is contrary to, or an unreasonable application of, clearly established federal law. He is not entitled to relief on that claim.

Petitioner's due process claim fares no better. Essentially, Petitioner argues that the prosecutor committed misconduct that prejudiced him when she stated: "they will give you information of what happened after that." *Redding*, 2015 WL 1225750, at *3. The prosecutor's reference to "they" was plainly Ms. Jones **and** Ms. McCormick.

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.

*See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The court of appeals concluded that Petitioner had failed to demonstrate any prejudice from the prosecutor's isolated remark:

> [A] careful review of what the prosecutor actually stated during opening statements shows that she never specified what McCormick would tell the jurors. The vast majority of the background was just given in general terms, without specifying who would be providing these details during the trial. Even when the prosecutor was discussing what items were taken during the robbery, the prosecutor carefully mentioned that Jones would be testifying regarding what was taken from her, but the prosecutor did not mention that McCormick would be testifying about what was taken from her:
>
> > One of the young ladies [Jones] had a purse with various items inside of it and she can testify to that, and that was taken from her. The other young lady [McCormick] had an I-phone it was or a Smart Phone, and that was taken from her, and that it was approximately 3:30.
>
> Additionally, the sole reference to any potential testimony on McCormick's part is found in the statement, "And then at that time the vehicle takes off and those young ladies, of course, run and they will give you information of what happened after

17

that." While this statement is patently incorrect because the prosecutor knew that McCormick would not be testifying, defendant cannot establish any prejudice. At best, the prosecutor's misuse of the pronoun "they" indicated that McCormick and Jones would be testifying regarding some undisclosed events that took place after the robbery happened and after defendant left the scene. Therefore, with the prosecutor's only reference to McCormick testifying relating to some unspecified events that had no bearing on defendant or the robbery itself, defendant cannot establish how he was prejudiced or how the jury was introduced to any of "McCormick's highly incriminating potential testimony."

*Redding*, 2015 WL 1225750, at *3. Even if the Court disagreed with the court of appeals analysis—and the Court does not disagree with it—Petitioner has utterly failed to show that the analysis was so lacking in justification that any fairminded person would reject it. Indeed, Petitioner does not respond to the court of appeals' analysis at all. He simply repeats his conclusory claim that the reference was prejudicial without addressing the court of appeals' analysis explaining why the reference was not prejudicial. Petitioner has, therefore, failed to show that the appellate court's determination of his due process claim is contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to habeas relief on this claim.

###    D.    Co-defendant's assertion of the Fifth Amendment privilege

Petitioner next contends that he was denied the right to confront his co-defendant, James Ready, and denied the right to present a defense based on Mr. Ready's anticipated exculpatory testimony. The Michigan Court of Appeals rejected Petitioner's contention because Mr. Ready's assertion of the Fifth Amendment privilege was determined to be valid. The trial court excused witness Ready based on his valid assertion of the privilege.

As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner attempts to bring this issue regarding the exclusion of witness Ready's testimony into the bounds of habeas cognizability by claiming that the exclusion violated Petitioner's right to confront Ready and to present a defense.

As stated above, the Confrontation Clause gives Petitioner the right to confront the witnesses against him. As also stated above, however, the right to confront applies only to witnesses against Petitioner. Petitioner offers nothing from the state court record to show that Ready provided any testimony against Petitioner. Therefore, Petitioner has not shown that the state appellate court's rejection of his Confrontation Clause claim is contrary to, or an unreasonable application of, clearly established federal law.

The Supreme Court has determined that a criminal defendant has the right to a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984), *quoted in Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). The right is derived from the Sixth Amendment rights to compel and confront witnesses and from the Due Process Clause of the Fourteenth Amendment. *See Holmes*, 547 U.S. at 324; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process law.").

The Supreme Court, however, repeatedly has recognized that the right to present a defense is subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers*, 410 U.S. at 295; *see also Wong v. Money*, 142 F.3d 313, 325 (6th Cir. 1998).

> "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted).

To avoid the prejudice that might result to the defendant, the Michigan courts will not put a witness on the stand if the witness intends to assert the privilege against self-incrimination. *Redding*, 2015 WL 1227570, at *4-*5. Although Petitioner contends that the state court rule violates his right to present a defense, he does not provide any Supreme Court authority

to support his contention. Indeed, he cannot. "[T]he Supreme Court has never held that permitting a witness to assert his or her Fifth Amendment privilege against self-incrimination without taking the witness stand violates a defendant's right to a fair trial . . . ." *Davis v. Straub*, 430 F.3d 281, 287 (6th Cir. 2005). Therefore, the state appellate court's determination that Petitioner's right to present a defense was not violated by recognizing Mr. Ready's claim of the Fifth Amendment privilege is neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

21

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   January 16, 2020                    /s/ Paul L. Maloney
                                             Paul L. Maloney
                                             United States District Judge